UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TIMOTHY WAYNE VOSS, | Case No. 08-CV-6484 (PJS/LIB) |
| Plaintiff, | |
| v. | ORDER |
| JEFFREY FEINE, in his individual capacity as an Officer of the Kanabec County Sheriff; JOEL BOS, in his individual capacity as an Officer of the Kanabec County Sheriff; and MARTY NELSON, in his individual capacity as an Officer of the Kanabec County Sheriff, | |
| Defendants. | |

Shane C. Perry and Shawn M. Perry, PERRY & PERRY, PLLP, for plaintiff.

Jason M. Hively, Jon K. Iverson, and Andrea B. Wing, IVERSON REUVERS, LLC, for defendants.

Plaintiff Timothy Wayne Voss brings this action pursuant to 42 U.S.C. § 1983, alleging that three officers from the Kanabec County Sheriff's Office violated the Fourth Amendment by arresting Voss in his home without a warrant. This matter is before the Court on defendants' motion for summary judgment. The Court holds that, accepting Voss's version of events as true, Voss's constitutional rights were violated. The Court further holds that only some of defendants' actions were protected by the doctrine of qualified immunity. Defendants' summary-judgment motion is therefore granted in part and denied in part.

I. BACKGROUND

On December 28, 2006, Voss was living in a trailer that he had parked inside a shed on farm land owned by his parents in Kanabec County, Minnesota. Voss Dep. 6-7, 32. At

10:55 a.m., Marty Nelson, a process server for the Kanabec County Sheriff's Office, knocked on the door of Voss's trailer to serve him with an order for protection obtained by an ex-girlfriend. Nelson Dep. 27-28; Dep. Ex. 4 at VOSS005; Dep. Ex. 15. No one answered the door, but Nelson heard a television or radio and surmised that Voss or someone else was inside. Nelson Dep. 28.

At 10:59 a.m., Nelson radioed Kanabec County dispatch to determine whether a truck parked near the trailer belonged to Voss. Nelson Dep. 28-29; Dep. Ex. 4 at VOSS005. Dispatcher Greg Baldwin ran the license-plate number that Nelson had relayed. Baldwin Dep. 11, 22. Nelson recalls that Baldwin then informed him that the truck belonged to Voss, that Chisago County had issued a warrant for Voss's arrest, and that Voss was the subject of an officer-safety alert. Nelson Dep. 29. The transcript of the conversation, however, reflects that Baldwin said nothing about a warrant; instead, Baldwin said only that the truck belonged to Voss and that there was an officer-safety alert on Voss. Baldwin Dep. Ex. 2.

An officer-safety or "KOPS" alert (an acronym for "Keep Our Police Safe") is used to warn law-enforcement officers of a person who might be dangerous. Schulz Dep. 7; Baldwin Dep. 36-37. A KOPS alert will also inform officers if the subject of the alert has an outstanding warrant. But all KOPS alerts contain a standard disclaimer warning that they are "for officer safety purposes only," that they are not themselves warrants, and that, before the subject of a KOPS alert is arrested, the subject's warrant status should be confirmed because "standing alone, this record does not furnish grounds for the search or seizure of any individual, vehicle, or

dwelling."[1] Dep. Ex. 22; Schulz Dep. 8-9; Bos Dep. 18-19. The KOPS alert on Voss contained this standard language. Schulz Dep. 8-9; Dep. Exs. 9, 22. Kanabec County Sheriff Steve Schulz confirmed that officers may not arrest an individual based solely on information about outstanding warrants contained in a KOPS alert. Schulz Dep. 32-33.

Kanabec County Sheriff's Deputies Jeffrey Feine and Joel Bos were together when they heard Nelson's exchange with Baldwin over the police radio. Bos Dep. 7-8, 11. At about 11:15 a.m., Feine contacted Baldwin and asked whether Nelson needed the deputies' assistance. Bos Dep. 11; Dep. Ex. 4 at VOSS005. Baldwin explained that Nelson was attempting to serve Voss with civil papers at his home, and that Voss "has a 29 out of Chisago." Bos Dep. 12; Dep. Ex. 25 at 2. Baldwin sometimes uses 10-code language as shorthand. Baldwin Dep. 43. In 10-code language, the phrase "10-29," or simply "29," means a stolen vehicle or wanted person. Baldwin Dep. 43; Baldwin Dep. Ex. 1 at Kanabec/Voss-478. In this case, Baldwin meant — and Feine and Bos understood him to mean — that Chisago County had issued a warrant for Voss's arrest. Baldwin Dep. 56; Bos Dep. 22; Feine Dep. 7-8. Baldwin then informed Feine that "[w]e've got an officer safety there also." Bos Dep. 12; Dep. Ex. 25 at 2.

By 11:20 a.m., Feine and Bos were heading to Voss's residence to assist Nelson. Dep. Ex. 25 at 3; Dep Ex. 4 at VOSS005. En route, Bos called Baldwin, and they had the following conversation:

---

[1] The KOPS alert uses only uppercase letters. To improve legibility, the Court uses uppercase and lowercase letters when quoting from the KOPS alert.

| | | |
|---|---|---|
| DEPUTY BOS: | | What's the warrant for on Voss? |

. . .

| | | |
|---|---|---|
| MR. BALDWIN: | | Yeah. I'm looking here. Yeah, there's a cops [KOPS] alert, officer safety, Timmy Voss out of Chisago, may have loaded handgun in vehicle. Officer safety. Then down here we get into Chisago County warrant. Where is it here? Public peace, aggravated harassment. |
| DEPUTY BOS: | | Do they want the vehicle? |
| MR. BALDWIN: | | It doesn't say, Joel. It was 2365 195th. Goes back to a '97 green Chevy, looked it up. |
| DEPUTY BOS: | | He has a green — or he has a handgun in there? |
| MR. BALDWIN: | | That's what the cops locate down there, the ATF, officer safety. |
| DEPUTY BOS: | | Okay. But they don't want the vehicle or anything? |
| MR. BALDWIN: | | Let's see. Terroristic threat, felony harassment, full extradition, body only, (inaudible) by Judge McBride. It doesn't say anything about the vehicle other than that. |
| DEPUTY BOS: | | All right. Thank you. |
| MR. BALDWIN: | | You bet. |

Dep. Ex. 25 at 3-4. In the audio recording of this exchange, Baldwin's voice is at times halting, as though he is reading aloud various portions of a document as he is skimming it. Baldwin Aff. Ex. A [Docket No. 21].

-4-

After this conversation with Baldwin, Feine and Bos arrived at Voss's trailer. Bos Dep. 23. Nelson waited some distance away while the deputies approached the trailer and Feine knocked on the door. Nelson Dep. 29; Feine Dep. 13; Bos Dep. 28. The knocking woke Voss, who was sleeping inside. Voss Dep. 36. When Voss opened the door, Bos pointed a gun at him. Voss Dep. 37-38.[2] Feine told Voss "to step out, that [Voss] was under arrest." Voss Dep. 37-38. Voss was in his stocking feet, and he stepped out of the trailer into fresh snow. Voss Dep. 37, 41. Voss was ordered to put his hands in front of him, and, after he complied, he was handcuffed. Voss Dep. 40. The deputies asked Voss if he wanted to go back inside for his shoes, but since Voss's feet were already wet, he declined. Voss Dep. 40-41. At no time did any defendant physically enter Voss's home. Voss Dep. 37-41.

Bos notified Baldwin that Feine and Bos had Voss in custody. Bos Dep. 32. The deputies then waited for Baldwin to confirm the existence of an arrest warrant on Voss. Nelson Dep. 32. Baldwin contacted Chisago County by phone to verify the warrant. Dep. Ex. 25 at 4-5. Chisago County verbally verified to Baldwin that there was an active warrant for Voss's arrest. *Id.*; Dep Ex. 4 at VOSS005. The radio log shows that Baldwin received confirmation of the warrant at about 11:29 a.m. Dep. Ex. 4 at VOSS005. Baldwin then contacted the deputies and told them that he had verified the arrest warrant on Voss. Baldwin Aff. ¶ 6; Baldwin Aff. Ex. A at 7:28-7:34. Feine testified that he placed Voss under arrest only after receiving this confirmation from Baldwin. Feine Dep. 12. Voss, as noted, contends that Feine told him that he was under arrest as soon as he opened the door to his trailer.

---

[2] Feine and Bos deny that anyone pointed a gun at Voss — and they deny other parts of Voss's account — but, in ruling on defendants' summary-judgment motion, the Court must accept Voss's evidence as true. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Voss asked to see the warrant, and Feine told him that he could see a copy at the jail. Feine Dep. 18-19. Voss was placed into Nelson's van for transport. Voss Dep. 41. Nelson estimates that only about four or five minutes elapsed between the deputies approaching Voss's trailer and Voss being placed in the van. Nelson Dep. 34-35. Judging by the entries on the radio log, the gap might have been as long as ten minutes. Dep. Ex. 4 at VOSS005.

At 11:32 a.m., Nelson radioed his starting mileage to Baldwin and drove Voss to the jail. Bos Dep. 38; Dep. Ex. 4 at VOSS005. Feine and Bos followed in their squad car. Bos Dep. 38; Dep. Ex. 4 at VOSS005. Defendants dropped Voss off at the jail for booking at 11:49 a.m., and the deputies had no further contact with Voss. Dep. Ex. 4 at VOSS005; Bos Dep. 39.

At 11:48 a.m., Baldwin followed up his verbal confirmation of the warrant on Voss by initiating a YQ-YR exchange with Chisago County. Baldwin Dep. 62-65; Dep. Ex. 12. A YQ-YR exchange — also known as a "hit confirmation" — is a commonly accepted method by which one government agency verifies the existence of a warrant issued by another government agency. Baldwin Dep. 63. After Baldwin transmitted a query (or "YQ") to Chisago County, Chisago County responded by transmitting a reply (or "YR") at 12:00 noon. In its response, Chisago Country confirmed the existence of a warrant for Voss's arrest. Dep. Ex. 13. At no time on December 28, 2006 did Feine, Bos, Nelson, or Baldwin personally possess or review a physical copy of the Chisago County warrant. Bos Dep. 46; Baldwin Dep. 40-41. Rather, they relied on what Chisago County told them about the warrant.

Unbeknownst to Feine, Bos, Nelson, and Baldwin, the information that they received from Chisago County was mistaken, as it later became clear that no valid warrant existed on Voss. Although a "complaint warrant" had been filed by a prosecutor and signed by a judge on

December 20, 2006 in connection with criminal charges brought against Voss in Chisago County, the warrant section of the form had been left blank. Dep. Ex. 19. Several months after Voss's arrest, a Chisago County prosecutor admitted to Judge Robert G. Rancourt that no warrant had been issued prior to Voss's arrest on December 28, 2006. Perry Aff. Ex. 1 at Finding of Fact No. 13 [Docket No. 28-1]. Judge Rancourt further found that no pick-up-and-hold order had been issued for Voss prior to his arrest. Perry Aff. Ex. 1 at Conclusion of Law No. 2.

After being booked at the Kanabec County Jail, Voss was transferred to the Chisago County Jail. Voss Dep. 65; Schulz Aff. Ex. B [Docket No. 23-2]. The next morning, Voss was arraigned on the criminal charges pending against him in Chisago County, and he was then transferred to the Washington County Jail. Voss Dep. 65-66. On January 1, 2007, Voss was released from the Washington County Jail after his family posted bail. Voss Dep. 68, 83-84.

Voss brings this action pursuant to 42 U.S.C. § 1983, claiming that Feine, Bos, and Nelson violated the Fourth Amendment by arresting him in his home without a valid warrant and without exigent circumstances. Amended Compl. ¶ 40 [Docket No. 2]. Voss also contends that defendants are not entitled to qualified immunity because they did not personally possess or review a physical copy of the purported warrant before arresting him. Defendants move for summary judgment.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## B. § 1983 Claim

Defendants contend that Voss's § 1983 claim must be dismissed because they have qualified immunity. The Supreme Court established a two-part inquiry for qualified immunity in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court first determines whether a constitutional violation occurred. If no constitutional violation occurred, the § 1983 claim obviously fails, and the court need not reach the question of qualified immunity. If a constitutional violation occurred, the court then determines whether the constitutional right was clearly established at the time of the alleged violation so that a reasonable officer would have understood that his or her conduct violated the right.

In *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009), the Supreme Court held that a court need not strictly follow *Saucier*'s two-step protocol. Instead, a court can find that an officer is entitled to qualified immunity because the officer's conduct did not violate a clearly established constitutional right, without first reaching the question of whether the officer's conduct violated a constitutional right at all.

1. Constitutionality of Voss's Arrest

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. The Supreme Court has made clear that the Fourth Amendment prohibits the warrantless arrest of a person in his home — even if an officer has probable cause to believe that the person has committed a crime — unless exigent circumstances justify the arrest. *Payton v. New York*, 445 U.S. 573, 590 (1980); *United States v. Spotted Elk*, 548 F.3d 641, 651 (8th Cir. 2008). Exigent circumstances typically include situations in which the life of a person in the home is at risk, the suspect's escape is imminent, or evidence is about to be destroyed. *Radloff v. City of Oelwein*, 380 F.3d 344, 348 (8th Cir. 2004).

It is undisputed that the trailer in which Voss was living was his home. It is also undisputed that no valid warrant for Voss's arrest existed on December 28, 2006; the necessary paperwork had not been completed, and thus no warrant had issued. Finally, it is undisputed that no exigent circumstance existed — and that Feine and Bos had no reason to believe that any exigent circumstance existed — at the time of Voss's arrest. *See* Bos Dep. 6-7; Feine Dep. 32.

In their briefs, defendants appeared to argue that, for purposes of the Fourth Amendment, Voss was not arrested inside of his home, but only after he had stepped outside of his home. But defendants conceded at oral argument that under Voss's version of events — in which the deputies knocked on Voss's door, told him that he was under arrest as soon as he opened the door, ordered him out of his home at gunpoint, and immediately handcuffed him — Voss was effectively arrested inside of his home, even though no defendant crossed the threshold. *See United States v. Thomas*, 430 F.3d 274, 277-81 (6th Cir. 2005) ("[A] consensual encounter at the

doorstep may evolve into a 'constructive entry' when the police, while not entering the house, deploy overbearing tactics that essentially force the individual out of the home. . . . The difference between . . . a permissible consensual encounter and an impermissible constructive entry . . . turns on the show of force exhibited by the police."); *but see United States v. Carrion*, 809 F.2d 1120, 1128 (5th Cir. 1987) (holding that police did not violate the Fourth Amendment when they did not cross the threshold of plaintiff's hotel room but pointed guns at and arrested defendant who remained within the hotel room).

Defendants' concession was well advised. When an officer standing immediately outside of the open door of a home points a gun at a suspect standing immediately inside of the open door of the home, tells the suspect that he is under arrest, orders the suspect to step outside of the home, and immediately places handcuffs on the suspect, the officer has clearly arrested the suspect inside of his home for Fourth Amendment purposes. Any other holding would invite egregious abuses by law-enforcement officers and substantially erode the Fourth Amendment's protection of the home. The Court therefore concludes that, under Voss's version of events — a version that the Court must accept as true — Voss was arrested inside of his home. Because no judicial officer had issued a warrant for Voss's arrest, and because exigent circumstances did not exist, Voss's arrest was unconstitutional.

2. Qualified Immunity

Defendants argue that, even if they violated Voss's rights under the Fourth Amendment, they are nevertheless entitled to qualified immunity. Defendants are protected from liability under the doctrine of qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

-10-

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When an officer acts on a reasonable, but mistaken, belief about the facts surrounding an arrest, he does not violate clearly established statutory or constitutional rights — provided that his conduct would have been lawful had the facts been as he reasonably believed them to be. *Saucier*, 533 U.S. at 206; *Engleman v. Deputy Murray*, 546 F.3d 944, 949 (8th Cir. 2008). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 129 S. Ct. at 815 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Defendants bear the burden of demonstrating the objective reasonableness of their mistaken belief. *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008).

The parties' briefs focus on whether the law regarding in-home arrests was clearly established at the time of Voss's arrest, but this misses the point. It is true that, "[t]o defeat a claim of qualified immunity, the contours of an alleged constitutional right must be 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Smook v. Minnehaha Cnty.*, 457 F.3d 806, 813 (8th Cir. 2006) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). But defendants admit that Voss's right not to be arrested in his home in the absence of a valid warrant or exigent circumstances *was* clearly established. Bos Dep. 6; Feine Dep. 18. Defendants contend that they are entitled to qualified immunity not because of a mistake of law, but because of a mistake of fact.

It is undisputed that Feine and Bos sincerely believed that a valid warrant existed for Voss's arrest. What is disputed is whether Feine and Bos's belief was objectively reasonable. In addressing that dispute, the Court will separately analyze two periods of time: (1) the period of

time before the deputies were informed that Chisago County had verified the existence of the warrant in the telephone conversation with Baldwin, and (2) the period of time after the deputies were informed that Chisago County had verified the existence of the warrant in the telephone conversation with Baldwin.

### a. Before Chisago County's Verification

A jury could readily conclude that Feine and Bos knew or should have known that, before Baldwin called Chisago County to confirm the existence of the warrant, Baldwin's sole source of information about the warrant was a KOPS alert. In Baldwin's first conversation with Feine, Baldwin informed Feine that Voss "has a 29 out of Chisago" — which the deputies understood to mean that Chisago County had issued a warrant for Voss's arrest, Bos Dep. 22; Feine Dep. 7-8 — and that there was "an officer safety there *also*," Dep. Ex. 25 at 2 (emphasis added). If this were the only conversation between Baldwin and the deputies prior to Voss's arrest, the deputies might have reasonably concluded that Baldwin had used the word "also" to indicate that Baldwin's information about Voss's warrant status came from some source other than the "officer safety" — that is, the KOPS alert.

But Baldwin had a second conversation with Bos before the deputies arrested Voss. In that second conversation, Bos asked Baldwin, "What's the warrant for on Voss?" Dep. Ex. 25 at 3. In response, Baldwin replied, "Yeah, there's a cops [KOPS] alert, officer safety, Timmy Voss out of Chisago, may have loaded handgun in vehicle. Officer safety. Then down here we get into Chisago County warrant. Where is it here? Public peace, aggravated harassment." Dep. Ex. 25 at 3-4. It is clear from the audio recording that, in trying to find the information sought by Bos — that is, in trying to learn more about the arrest warrant on Voss — Baldwin was looking

through a document and narrating what he was reading. Baldwin Aff. Ex. A. It is also clear that Baldwin's response to Bos's question very closely tracked the language in the KOPS alert issued for Voss. *Compare* Dep Ex. 25 at 3-4 *with* Dep. Ex. 22. In Baldwin's deposition, he reviewed the KOPS alert and the transcript of his conversation with Bos. Baldwin Dep. 57-59. Although Baldwin did not specifically remember the conversation, he acknowledged that, based on his comparison of the transcript and the KOPS alert, he probably had been reading to Bos from the KOPS alert.[3] Baldwin Dep. 59. Baldwin further testified that the language in Voss's KOPS alert was typical of KOPS alerts issued at the time of Voss's arrest. Baldwin Dep. 59.

Feine and Bos admitted that they were familiar with the typical format of KOPS alerts and were aware that officers should not rely solely on KOPS alerts for warrant-status information. Bos Dep. 9-10; Feine Dep. 27-28. Moreover, there is evidence that would allow a reasonable jury to infer that, at the time that the deputies knocked on Voss's door, they knew that the purported warrant had to be verified before they could arrest Voss. After all, under the deputies' own version of events, they did not arrest Voss at the time that they handcuffed him, but instead waited until Baldwin verified the existence of the warrant. Feine Dep. 12; Nelson Dep. 32.

The deputies deny that they recognized that Baldwin was reading to them from a KOPS alert or that, as the KOPS alert instructed, they needed to confirm the existence of the warrant before arresting Voss. Bos Dep. 23-26. But as the deputies' attorney conceded at oral argument,

---

[3]The deposition transcript reflects that Baldwin was asked whether it appeared that he was reading to "Deputy Voss" from the KOPS alert. Baldwin Dep. 59. It appears that this was either a misstatement by Voss's attorney or a transcription error by the court reporter. The question obviously referred to Bos, not Voss, and there is no doubt that Baldwin understood the question to refer to his conversation with Bos.

Voss is entitled to a factual inference — based on the similarity between a typical KOPS alert and what Baldwin read to Bos, as well as the deputies' familiarity with a typical KOPS alert — that at the time that the deputies knocked on Voss's door and (according to Voss) forced him out of his home at gunpoint, the deputies knew or should have known that they were acting solely on the basis of information about a warrant contained in a KOPS alert.

That is not the end of the matter, however. If acting solely on the basis of a KOPS alert is *reasonable* — if, for example, warrant information in a KOPS alert is almost invariably accurate — then the deputies might nevertheless be entitled to qualified immunity. But there is virtually no evidence in the record about the reliability of warrant-status information in KOPS alerts. For example, there is no testimony from anyone about how frequently warrant-status information contained in KOPS alerts turns out to be accurate (or inaccurate), nor is there any evidence about if, when, how, or by whom warrant-status information in KOPS alerts is verified. The primary evidence in the record about the reliability of warrant-status information in KOPS alerts is the standard disclaimer found in every KOPS alert — a disclaimer that warns that, "standing alone, [a KOPS alert] does not furnish grounds for the search or seizure of any individual . . . " and that warrant-status information should be verified before being acted upon. Dep. Ex. 22.

In short, a jury could find that, until the deputies received word from Baldwin that Chisago County had verified Voss's warrant, the deputies knew or should have known that they were acting solely on the basis of warrant information found in a KOPS alert. Moreover, a jury could find that warrant information found in KOPS alerts is not reliable, that the deputies knew that such information is not reliable, and that the deputies acted unreasonably in arresting Voss in his home on the basis of such information. Defendants therefore are not entitled to qualified

immunity for actions taken before they were told by Baldwin that he had verified the existence of the warrant with Chisago County.[4]

### b. After Chisago County's Verification

After the deputies were told by Baldwin that Chisago County had confirmed the existence of the warrant, the "'objective facts available'" to defendants would have caused a reasonable officer to believe that there was a valid, active warrant for Voss's arrest. *Engleman*, 546 F.3d at 949 (quoting *Maryland v. Garrison*, 480 U.S. 79, 88 (1987)). An officer in the field has an "objectively reasonable basis" for making an arrest when he relies on a dispatcher's confirmation that an arrest warrant exists. *Young v. City of Little Rock*, 249 F.3d 730, 734 (8th Cir. 2001) (holding that a mistaken belief as to warrant status was reasonable when it was based on an in-car computer display showing the existence of a warrant and on the dispatcher's warrant verification). Defendants are therefore entitled to qualified immunity with respect to their conduct after being notified by Baldwin that Chisago County had verified the existence of the warrant.

Voss disagrees. Voss contended at oral argument — although not in his brief — that under the Eighth Circuit's *Spotted Elk* decision, an officer who is about to arrest a suspect in his home pursuant to a warrant cannot rely on a dispatcher's report that he confirmed the existence of that warrant. In support of his argument, Voss relied entirely on one sentence in *Spotted Elk* in which the Eighth Circuit said that the Fourth Amendment "requires the police to *obtain* a warrant

---

[4]The Court does not understand how the deputies' actions could result in § 1983 liability for Nelson, who did not arrest Voss and who merely transported Voss to the jail *after* Baldwin informed the deputies that Chisago County had confirmed the existence of the warrant. Nelson Dep. 5, 29-30. Because this issue was not briefed, however, the Court will not grant the summary-judgment motion as to Nelson alone.

before entering a home." 548 F.3d at 651 (emphasis added). Voss suggested that, in this one sentence, the Eighth Circuit held that, before a law-enforcement officer can arrest a suspect in his home, the officer must personally obtain or review a copy of the arrest warrant for the suspect. Because Voss did not brief this issue, his argument is not entirely clear, but he seems to suggest that Feine and Bos did not act reasonably in relying on Baldwin's report that he had verified the existence of the warrant because, under *Spotted Elk*, the law was clearly established that Feine and Bos could not arrest Voss in his home until they had personally obtained or reviewed a copy of the warrant.[5]

Voss reads far too much into the one sentence that he quotes from *Spotted Elk*. To begin with, that sentence was dicta. It appeared in a section of the opinion addressing the legality of a *warrantless* search of a home. The government argued that no warrant was needed because exigent circumstances justified the search; the defendant argued that a warrant was needed because exigent circumstances did not justify the search; and the Eighth Circuit agreed with the government that exigent circumstances existed. Neither the Eighth Circuit nor any of the parties

---

[5]Voss did clarify that, although his Amended Complaint makes reference to Minn. Stat. § 629.32 (which requires a peace officer to "show the defendant the warrant if requested to do so"), Voss is not bringing any state-law claim against defendants. Voss Br. S.J. at 22-23. The Court notes that "an alleged violation of a state statute does not give rise to a corresponding § 1983 violation, unless the right encompassed in the state statute is guaranteed under the United States Constitution." *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1349 (7th Cir. 1985); *Whisman v. Rinehart*, 119 F.3d 1303, 1312 (8th Cir. 1997); *see also Snowden v. Hughes*, 321 U.S. 1, 11 (1944) (holding that "[m]ere violation of a state statute does not infringe the federal Constitution"). And "[a] public official does not lose his qualified immunity merely because his conduct violates some statutory or administrative provision." *Edwards v. Baer*, 863 F.2d 606, 608 (8th Cir. 1988). Thus, the Court does not agree with Voss that Minn. Stat. § 629.32 "bolsters the evidence showing that Defendants['] failure to obtain a warrant was objectively unreasonable since they were required to give Plaintiff a copy to comply with" state law. Voss Br. S.J. 23.

discussed the question of whether an officer who searches a home pursuant to a warrant must personally possess or review a copy of that warrant.

The sentence on which Voss places so much weight is nothing more than an introductory sentence making the point that, before a home may be searched, a judicial officer must "[g]enerally" issue a warrant. *Spotted Elk*, 548 F.3d at 651. That sentence is followed by a citation to the page of the Supreme Court's opinion in *Payton v. New York* on which the Court said simply that the threshold of a home "may not reasonably be crossed without a warrant" and in no way suggested that the officer who crosses the threshold must personally obtain or review a copy of that warrant. 455 U.S. 573, 590 (1980). Following the citation to *Payton*, the Eighth Circuit continued by saying that, although a home generally cannot be searched without a warrant, there are exceptions, and one of those exceptions is for exigent circumstances. *Spotted Elk*, 548 F.3d at 651. It is absurd to suggest that the Eighth Circuit intended to break new Fourth Amendment ground and hold *in a case that did not even raise the issue* that an officer cannot arrest a suspect in his home pursuant to a warrant unless the officer personally obtains or reviews a copy of that warrant.

The Court is not aware of — and Voss has not cited — a single decision of the Eighth Circuit or any other federal court agreeing with Voss's characterization of the law. To the contrary, in the closely related context of search warrants, it is quite common for law-enforcement officers to search a home after being notified by telephone, radio, or e-mail that a judge has signed a search warrant. And "[c]ourts have repeatedly upheld searches conducted by law enforcement officials notified by telephone or radio once the search warrant issued." *United States v. Bonner*, 808 F.2d 864, 869 (1st Cir. 1986). Voss has not suggested any reason why it

should be lawful for a law-enforcement officer to rely on telephonic confirmation that a search warrant has issued, but unlawful for a law-enforcement officer to rely on telephonic confirmation that an arrest warrant has issued. As the Supreme Court has said, "any differences in the intrusiveness of entries to search and entries to arrest are merely ones of degree rather than kind" and the terms of the Fourth Amendment that "draw[] a firm line at the entrance to the house" are "terms that apply equally to seizures of property and to seizures of persons." *Payton*, 445 U.S. at 589, 590.

In *United States v. Hepperle*, the Eighth Circuit did remark, in the context of a search of a commercial establishment, that although law-enforcement officers "should be discouraged" from conducting searches "with a warrant 'to arrive later,'" such searches are *not* necessarily unconstitutional. 810 F.2d 836, 839 (8th Cir. 1987). In light of the many developments in both technology and Fourth Amendment law in the past quarter century, the Court doubts that the Eighth Circuit would express similar reservations today. In any event, *Hepperle* falls far short of establishing that an officer must have a copy of a warrant in hand before he can make an in-home arrest of a suspect. And other circuits have explicitly rejected the notion that the Fourth Amendment requires an officer to personally possess or review a copy of a search or arrest warrant before he enters a home. *See, e.g., Mazuz v. Maryland*, 442 F.3d 217, 229 (4th Cir. 2006) ("Concerning the fact that Tou did not carry the warrants with him during the actual raid, we note initially that the Fourth Amendment does not require that an officer executing a search must physically possess the warrant at the commencement of the search."), *abrogated on other grounds by Pearson*, 129 S. Ct. 808; *cf. Groh*, 540 U.S. at 562 n.5 ("It is true, as petitioner points out, that neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure
-18-

requires the executing officer to serve the warrant on the owner before commencing the search.").

In sum, the Court finds that, at the time that Feine and Bos arrested Voss, it was not established — much less clearly established — that a law-enforcement officer could not arrest a suspect in his home pursuant to a warrant unless the officer personally possessed or reviewed a copy of that warrant. Moreover, the Court finds that it was reasonable for Feine and Bos to rely on the report of their dispatcher that he had called Chisago County and that Chisago County had told him that a warrant to arrest Voss had been issued. Thus, defendants may not be held liable for any action taken after they were notified by Baldwin that he had confirmed the existence of the warrant.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendants' motion for summary judgment [Docket No. 19] is GRANTED IN PART and DENIED IN PART as follows:

1. With respect to plaintiff Timothy Wayne Voss's claim against defendants for alleged Fourth Amendment violations that occurred *before* defendants were informed that Chisago County had verified Voss's warrant status, the motion is DENIED.

2. With respect to plaintiff Timothy Wayne Voss's claim against defendants for alleged Fourth Amendment violations that occurred *after* defendants were informed that Chisago County had verified Voss's warrant status, the motion is

GRANTED. That claim is DISMISSED WITH PREJUDICE AND ON THE MERITS.

Dated: November 17, 2010            s/Patrick J. Schiltz
                                    Patrick J. Schiltz
                                    United States District Judge